# THE PEOPLE OF THE TERRITORY OF UTAH, RESPONDENT, v. WILFORD H. HALLIDAY, APPELLANT.

CRIMINAL LAW.—HOMICIDE—MURDER FIRST DEGREE—INDICTMENT— An indictment charging that the defendant unlawfully, feloniously, willfully and with malice aforethought, held a pistol loaded with gunpowder and leaden bullet at and against the deceased, and then and there unlawfully, feloniously and with malice aforethought discharged the same at the deceased, and that he unlawfully, feloniously, willfully and with malice aforethought did inflict a mortal wound in and through the head of the deceased, of which he instantly died and that in that manner defendant unlawfully, feloniously, willfully and with malice aforethought, killed and murdered the deceased, is sufficient to charge murder in the first degree.

ID.—ID.—THREATS BY DECEASED.—Threats of deceased against defendant, where there was no evidence tending to prove that on the occasion of the killing deceased assumed a threatening attitude towards defendant or tending to show any circumstance calculated to excite fear of danger in a reasonable person, or intending to show that defendant acted from such fear, but on the contrary the evidence showed that defendant did not act from such fear, were inadmissible in evidence.

ID.—ID.—ADULTERY WITH DEFENDANT'S WIFE.—Under section 1925, Compiled Laws, 1876, if the husband after learning of the defilement of his wife waits and deliberates and then, not in a sudden heat of passion, went a considerable distance with a pistol to the house of deceased and there killed him, such provocation forms no justification, and evidence thereof is inadmissible.

ID.—ID.—INSTRUCTIONS.—If the court in charging the jury defines murder in the first degree as murder in the second degree, such error is one of which defendant cannot take advantage because he is not prejudiced thereby.

APPEAL from a judgment of conviction of murder in the first degree of the district court of the second district. The opinion states the facts.

*Mr. Presley Denny*, for appellant.

*Mr. Charles W. Zane* and *Mr. George S. Peters*, for respondent.

ZANE, C. J.:

The appellant was convicted of the crime of murder in the first degree, and upon the recommendation of the jury was sentenced by the court to imprisonment at hard labor for life in the penitentiary. This conviction the defendant assigns for error—first, because, as he avers, the indictment does not contain an allegation that the homicide was with deliberation. To sustain a conviction of murder in the first degree the indictment must contain all the facts essential to that crime; in other words, the performance of the act and the forming of the intent, together constituting the crime, must appear. The indictment in substance states that the defendant unlawfully, feloniously, willfully and with malice aforethought held a pistol loaded with gunpowder and leaden bullet at and against Joseph Dobson, the deceased, he being in the peace of the people, and then and there unlawfully, feloniously, willfully and with malice aforethought discharged the same at the deceased, and that he unlawfully, feloniously, willfully and with malice aforethought did inflict a mortal wound in and through the head of the deceased, of which he instantly died, and that defendant in that manner unlawfully, feloniously, willfully and with malice aforethought killed and murdered the deceased, contrary to the form of the statute, etc. The indictment was a good common-law indictment. The question is, does it sufficiently describe the crime of murder in the first degree, as defined in chapter 1, entitled "Homicide," Laws Utah, 1876? Section 87 of that chapter is as follows: "Murder is the unlawful killing of a human being, with malice aforethought;" and section 88: "Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature; it is implied when no considerable provocation appears, or when the circumstances attending the killing show an

abandoned or malignant heart." The legislature, in these sections, declared in effect that malice aforethought, when express, shall mean a deliberate intention unlawfully to take away the life of a human being, and is implied when the unlawful killing is without any considerable provocation, or when the circumstances of the killing show an abandoned or malignant heart. Then follows section 89: "Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing, or committed in the perpetration of, or attempted to perpetrate, any arson, rape, burglary, or robbery, or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, or perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, is murder in the first degree; and any. other homicide committed under such circumstances as would have constituted murder at common-law, is murder in the second degree." Whenever the murder is perpetrated with the specific intent to take the life of a human being unlawfully, the killing is deliberate and premeditated.

It is believed that a man cannot form a specific intent to kill a particular individual without such thought as amounts to deliberation and premeditation. Bishop says: "But now comes a statute of dividing—as it is sometimes expressed—murder into two degrees. . . There is added to the former elements of murder the intent to kill. If the murderer does not have in his mind an intent which was not necessary to constitute murder at common law, he does not commit the statutory offense which is called murder in the first degree." 2 Bish. Crim. Proc., section 582. And Wharton, speaking of the same statute, says: "The general definition of the statute simply divides murder into two classes—murder with a specific intent to take life being murder in the first degree; murder without a specific intent to take life being murder in the second degree. . . . To constitute murder of the first degree the intent of the party killing must have been to take life; whereas, by the common law, if the mortal blow is

malicious, and death comes, the perpetrator is guilty of
murder, whether such an intent does or does not appear to
have existed in his mind. The injury being malicious,
the common law holds the offender responsible for all the
consequences following his unlawful act." 2 Whart. Crim.
Law, sections 1084, 1106.

The question arises, do the facts alleged in the indict-
ment show that the appellant had, at the time of the kill-
ing, a specific intent to take the life of the deceased? It
is alleged in the indictment that the appellant held in his
hand a pistol loaded with powder and leaden bullet, and
that he feloniously, willfully, and with malice aforethought
held it at and against the deceased, and that he feloniously,
willfully, and with malice aforethought discharged the
same at the deceased, and thereby wounded him in the
head, of which wound he instantly died, and that by that
means the appellant feloniously, willfully, and with malice
aforethought killed and murdered the deceased. Assum-
ing these facts to be true, no room is left to infer that the
appellant intended to commit some other felony, and un-
designedly killed the deceased. It cannot be inferred
from these facts that the appellant intended to commit a
bodily injury without producing death. The weapon, the
manner of its use, the place and nature of the wound, for-
bid such an inference. The appellant must be held to
have intended the natural and probable consequences of
his act. If a man, knowing what he is doing, shoots a
bullet through the head of another person, he will not be
heard to say that he did not intend to kill him—that he
simply intended a bodily injury without death. But the
averments of this indictment go further and say that the
killing of the deceased was willful and with malice afore-
thought—not that some other felonious act was willful
and with malice aforethought. Here the deliberation and
premeditation must have been on the killing of the de-
ceased, not on the commission of some other felony; and,
assuming the acts averred to have been willful and with
malice aforethought, they manifest a specific intent to take
the life of the deceased. Lowrie, C. J., in the case of
*Keenan* v. *Com.*, 44 Pa. St., 55, after speaking of mur-

der in the first and second degrees, and remarking that
their reported jurisprudence was very uniform in holding
that the true criterion of the first degree was the intent to
take life, and that the deliberation required was not on
the intent, but on the killing, and that the malice must
be a special malice which aims at the life of a person, said:
"Keeping this common understanding of the definition in
mind, we shall also get clear of the influence of the cases
in other states, where the terms 'deliberate' and 'premedi-
tated' are applied to the malice or intent, and not to the
act, and thus seem to require a purpose brooded over,
formed, and matured before the occasion at which it is
carried into act.   Under such a definition of the intention,
all our jurisprudence under which malice and intent are
implied from the character of the act and from the deadly
nature of the weapon used would be set aside; for we
could not from these imply such a previous and deliberate,
but only a distinctly formed, intent, and this involves de-
liberation and premeditation, though they may be very
brief.   We should therefore blot out all our law relative to
implied intent or malice, and require it to be always proved
as express; and this would be a most disastrous result, for
the most deliberate murderers are usually those who know
how to conceal their intent until the occasion arrives for
the execution of it."   So, in this case, from the character
of the act, and from the deadly nature of the weapon
used, and the nature of the wound, with the averments
that such acts were willful and with malice aforethought,
we must infer a specific intent to kill.   Such averments
show a specific intent to kill, and such an intent must be
preceded by deliberation and premeditation.   The law
does not require that the words "deliberation" and "pre-
meditation" shall be used in the indictment; it is sufficient
if equivalent language is used.

On the trial counsel for defendant offered to prove that
the deceased, more than a day prior to the killing, had
made threats against the defendant.   Precisely what they
were the record does not disclose.   To the admission of
them in evidence the prosecuting attorney objected on the
ground that there was no evidence tending to prove that

deceased had assumed a threatening attitude towards the defendant on the occasion of the killing, and for the reason that the evidence did not tend to show any circumstance sufficient or calculated to excite fear of danger in a reasonable person, and because it did appear from the evidence that defendant did not act from any such fear. The court sustained the objection. To this ruling the defendant excepted, and assigns the same as error.

The only two persons in the room at the time of the homicide besides defendant, the deceased, and his little children—too young to testify—were the wife of the deceased and her mother, Mrs. Reeve. Both of them testified that the defendant came into the house and inquired for Dobson, and, seeing him lying on the bed asleep, or apparently so, shot him in the arm and through the head before he spoke, and that deceased died in a very few minutes; that they did not see the deceased have a weapon, and that none was found on him. There had been no evidence tending to prove any circumstance to arouse any fear of danger to defendant. Under such conditions, threats at a former time could not constitute any justification. To hold otherwise would be to say that, if one man threatens another, the other is justified in shooting him. After the court had ruled as above, the defendant testified in his own behalf. He was at his father's house, and went from there to the house of Dobson, tied his horse, walked up to the door and rapped. The wife of the deceased told him to come in. He stepped in, and asked if Joseph Dobson was there. No answer was made. Witness looked at the side room; expected a bullet on the side; had been notified that he would "get it on sight." He never saw Dobson till he rose up, and never would have seen him if he hadn't risen up. To use the witness' own language: "It don't matter; I can tell you just exactly how he was lying. He was lying on his left side, with his left arm by his left side, and with his right arm by his right side,—that way, —and his hat on the back of his head." Witness further testified: "And I guess the quietness—nobody speaking —must be what woke him, and made him raise up when he was asleep. I don't know whether he was asleep or not,

but he turned over from that way. He threw his hands into the pocket of his overalls—he threw his hand into his right-hand overalls' pocket to draw 'his pistol, and I fired and caught him. I could put a bullet in his eye just as easy as wink." On cross-examination defendant testified that he shot deceased first in his right arm and then in the left. That these were the only two shots. He had been convicted, he testified, of a felony on the fifth of January, 1883. The witness first testified that he did not see deceased until he rose up, and that he never would have seen him had he not risen; and immediately said that he could tell exactly how the deceased was lying—that he was lying on his left side, with his left arm by his left side and his right arm by his right side. The defendant did not testify that he saw a pistol or any other weapon on the deceased at the time he shot him. The evidence shows conclusively that defendant went to the house of the deceased armed with a loaded pistol, and without any provocation at the time of the killing, shot him twice—once in the arm, and once in the head. After the defendant had testified, no witness was asked as to threats,

The evidence shows that defendant was away from home, and returned on Saturday. The defendant offered evidence tending to show that deceased had before that time committed adultery with defendant's wife, and that he was informed of such adultery on Saturday—as a justification for going armed a considerable distance to the house of the deceased, on Sunday evening, and, without provocation at the time, shooting him while in bed. The defendant relies on section 1925, Comp. Laws 1876. 'The provision is this: Homicide is justifiable when committed by any one * * * in a sudden heat of passion caused by the attempt of any such offender to commit a rape upon his wife, daughter, sister, mother, or other female relation of defendant, or to defile the same, or when the defilement has actually been committed." The provision of law quoted justifies a homicide committed by the husband in a sudden heat of passion caused by the attempt of the man slain to defile his wife, or caused by her defilement. But the killing must be without deliberation after knowledge of the

fact. The law will not permit the husband to say that he slew the defiler of his wife in a sudden heat of passion after deliberating upon the defilement 24 hours. Bishop states the rule thus: "If a husband finds his wife committing adultery, and, provoked by the wrong, instantly takes her life or the adulterer's, * * * the homicide is only manslaughter. But if, on merely hearing of the outrage, he pursues and kills the offender, he commits murder. The distinction rests on the greater tendency of seeing the passing fact than of hearing of it when accomplished, to stir the passions; and if the husband is not actually witnessing his wife's adultery, but knows it is transpiring, and, in an overpowering passion, no time for cooling having elapsed, he kills the wrong-doer, the offense is reduced to manslaughter." 2 Bish. Crim. Law, (2d Ed.) sec. 708. The law is that if the husband after learning of the defilement of his wife waits and deliberates, and then kills the defiler, in so doing he commits the crime of murder. And if the fact had been proven that the appellant had heard of the defilement of his wife on the day before the homicide, it would not have constituted any justification for the killing, or a sufficient provocation to reduce the crime to manslaughter.

The court charged the jury as follows: "If, however, you believe from the evidence that the defendant is not guilty of murder in the first degree, yet you are satisfied from the evidence beyond a reasonable doubt that the defendant did on the 28th day of November, 1886, at the county of Kane in the territory of Utah, unlawfully, willfully and maliciously, and premeditatedly, and without deliberation, shoot and kill the said Dobson in manner and form as charged in the indictment, your verdict should be that defendant is guilty of murder in the second degree." By this language the defendant insists that the court described murder in the first degree, and that it was error to inform the jury that it constituted murder in the second degree. The court said that if the killing was done willfully, maliciously and premeditatedly, and without deliberation, it was murder in the second degree. The court evidently intended to qualify the meaning of the terms "ma-

liciously, willfully, and premeditatedly," by the use of the words "without deliberation." Murder without deliberation means without sufficient thought to enable the person killing to form a distinct intention to kill. If it were conceded that the court defined murder in the first degree, and charged the jury that it constituted murder in the second degree, we would be unable to see how such an error could have prejudiced the defendant. Had the jury been misled by such a charge, it would have favored the defendant, by securing him lighter punishment. From the fact that the jury found the defendant guilty of murder in the first degree it is apparent that the jury were not misled by the portion quoted of the charge.

Numerous other errors are alleged in the record, but we do not think them well taken. The judgment of the court below is affirmed.

BOREMAN, J., and HENDERSON, J., concurred.